**ARMSTRONG et al. v. ANDERSON et al.**

No. 3285.

Court of Civil Appeals of Texas. El Paso.

Feb. 6, 1936.

Rehearing Denied March 5, 1936.

McBroom & Clayton and Leo Jaffe, all of El Paso, for appellants.

Richard F. Burges and Walter S. Howe, both of El Paso, for appellees.

PELPHREY, Chief Justice.

This is the fourth time this case has been before this court, the former opinions appearing in 55 S.W.(2d) 235, 70 S.W.(2d) 801, and 75 S.W.(2d) 1104, to which reference is here made for a statement of the facts giving rise to the litigation.

Mrs. Anderson was the surviving widow of W. K. Marr and served both as ex-

ecutrix and administratrix of his estate. A portion of the matters which will be discussed here occurred before she remarried, but to avoid confusion we shall refer to her as Mrs. Anderson.

In the first appeal Mrs. Anderson sought to have appellant Armstrong removed as administrator of the estate; to have herself reinstated as independent executrix; to have a reauditing of the attorney's fees claimed by Armstrong, the administratrix's fees, and the commission claimed by appellant.

The judgment of the trial court removing Armstrong and refusing to reinstate Mrs. Anderson was affirmed by this court and a writ of error to the Supreme Court dismissed for want of jurisdiction.

While the first appeal was pending in this court, Mrs. Anderson, joined by her husband, filed a petition for certiorari to the Forty-first district court of El Paso county praying for a reauditing of her account as administratrix and Armstrong's first annual account as administrator. Upon hearing, judgment was rendered reauditing Mrs. Anderson's account as administratrix, deducting therefrom certain allowances which had been made to her, and striking out the $4,500 fee allowed to Armstrong.

That judgment was affirmed by this court [70 S.W.(2d) 801] and again a writ of error was dismissed by the Supreme Court.

After the decision in the latter case, Armstrong filed in the probate court of El Paso county a final account in which he claimed a credit for $4,500 as attorney's fees. The account was contested and upon a hearing the attorney's fee was fixed at $2,500 and judgment rendered for such amount, together with one-half of the commissions found to be lawfully due Mrs. Anderson as administratrix. An appeal to the district court followed, where judgment in favor of Mrs. Anderson for the sum of $5,967.12 was rendered. On an appeal to this court we held that the probate court was without authority to settle Armstrong's account after he had been removed and his successor appointed. 75 S. W.(2d) 1104.

Shortly after the above judgment, the present suit was instituted by Mrs. Anderson, joined by her husband, in the Forty-first district court. She alleged that Armstrong had received a certain sum of money and had willfully, unlawfully, and fraud-ulently diverted certain sums from the estate and appropriated them to his own use and benefit. She prayed for judgment for the sum so diverted against Armstrong and his surety, American Surety Company. Appellants answered by general demurrer, general denial, plea of res judicata, and other special pleas not necessary to here enumerate. In a trial before the court, judgment was rendered against both defendants for $4,195, plus interest, with judgment in favor of the surety company over against Armstrong for a like amount.

Both defendants in the lower court have appealed, Armstrong by the giving of a cost appeal bond and American Surety Company by the giving of a supersedeas appeal bond.

## Opinion.

Armstrong presents thirty-four assignments of error and American Surety Company's brief contains forty-seven. Appellant Armstrong has briefed all of his assignments while appellant American Surety Company has adopted Armstrong's brief and in addition has presented sixteen propositions upon which a reversal is sought.

Relative to the judgment approving Armstrong's annual accounts the court concluded as follows:

"The approval of the two annual accounts of the defendant, wherein the payment to himself of said attorney's fees was shown, does not preclude his duty to account to the estate therefor."

"A judgment of the Probate Court on an annual account is not a final judgment. Further, such approval existed at the time of the trial of the removal suit and should have been there urged. It should, likewise, have been urged in the trial of the certiorari suit."

"The excessive commissions were litigated between plaintiff and defendant in the certiorari case. At the time same were allowed and at the time he paid them to himself, he had notice of their excessiveness. His withdrawal of the excessive commissions was a misapplication of the funds of the estate and he is liable to account therefor. The approval of the annual account as administrator is not res adjudicata on this issue. The defendant surety is, likewise, liable. It is entitled to a judgment over against defendant Armstrong."

Several of appellants' assignments attack the above conclusion that the judgment on the annual account was not a final judgment and not res judicata on the question of the correctness of the amount therein allowed Armstrong.

Both parties have cited us numerous authorities.

Appellants, taking the position that the present suit having been filed originally in the district court is a collateral attack and that the probate court having had jurisdiction, assert the judgment is conclusive even though all of the legal requirements were not complied with.

Appellee, on the other hand, contends that the approval of the annual account is not such a final judgment as cannot be collaterally attacked. The general rule is that a judgment order or decree of a probate court is equally as immune from collateral attack as is the judgment of any other court acting within the scope of its jurisdiction. 13 Tex.Jur. § 53, p. 638, and cases cited; Kreis v. Kreis (Tex.Civ.App.) 36 S.W.(2d) 821.

Appellees, however, contend that the authorities they present except the orders approving annual accounts from that general rule.

One of the cases which they claim is decisive of the question is Henderson v. Ayres, 23 Tex. 96. After a careful study of that holding upon the facts there involved, we are of the opinion that it should not control here. In that case the claims of the plaintiffs had been refused which gave them the right to go into the proper court to have them established. Article 3522, R.S. In connection with their suit to establish their claims, it is true they alleged a conspiracy between the administrator and the other defendants to have illegal claims in which the administrator was interested acknowledged as debts to the exclusion of other valid claims, yet there was no question presented there that such claims had theretofore been approved in any account of the administrator.

The other authorities cited holding that approval of the administrator's annual exhibit did not prevent a re-examination of the charges against the estate upon a hearing on the final account are likewise not conclusive on the question here.

A case involving the identical question and under facts practically identical is that of Herbert v. Harbert (Tex.Civ.App.) 59 S.W. 594, 595. In that case the court said:

"Since this is an original suit in the district court, and not a direct proceeding to review the orders of the probate court, the orders of that court approving the accounts of the administrator are conclusive as to the matters to which they relate."

It is our opinion that the judgment approving the first annual account of Armstrong is conclusive as to the charges therein unless there be something in the removal and certiorari judgments which would affect that conclusiveness. The revision and restatement of the first annual account having been excluded by the court from the effect of its judgment, Armstrong v. Anderson (Tex.Civ.App.) 70 S.W.(2d) 801, it cannot be said to have such effect. The certiorari proceeding having been brought by Mrs. Anderson individually as heir at law, sole devisee under the will, and as a creditor of the estate, and the present suit being as administratrix de bonis non, of the estate of W. K. Marr, deceased, she is not estopped by the judgment in the former suit. Hardin v. Hardin (Tex.Civ.App.) 1 S.W.(2d) 708; Pryor v. Krause (Tex.Civ.App.) 168 S.W. 498, writ refused; 34 C.J. § 1418, pp. 997, 998.

If we be correct in these conclusions, then the only matters which the trial court should have considered were as to the allowance of those payments made by Armstrong subsequent to the approval of his first annual account, to wit: Balance paid to himself as attorney's fee on July 20, 1931, $435.83; sums paid to J. I. Driscoll for costs in Court of Civil Appeals, June 16, 1933, $41.20; and to C. W. Harper, for costs in district court, $19.65, July 13, 1933.

As we understand appellants' position as to these items, they do not question their correctness, but merely contend that they are not liable for them because the judgment approving the final account of Mrs. Anderson as administratrix is res judicata as to the propriety and legality of all disbursements made by Armstrong, including these items.

In support of this position, they argue that Armstrong not having been a party in the proceeding to approve the final account of Mrs. Anderson, the district court, in an exercise of appellate jurisdiction, likewise had no power to adjudicate his rights in the certiorari proceeding and

that the judgment was necessarily a nullity.

With such contention we cannot agree.

Articles 932 to 935, inclusive, of the Revised Statutes, provide that any person interested in the estate of a decedent may have the proceedings in the county court revised and corrected; that his application for writ of certiorari shall state the name and residence of each party adversely interested; that he must execute a bond payable to the adverse party in order to supersede the county court judgment; and the clerk shall issue citation to the party named in the application as being adversely interested.

Mrs. Anderson was certainly a party interested in the estate and most certainly Armstrong was adversely interested in the matters presented by her application.

We think, clearly, there was no want of jurisdiction in the district court to entertain the proceeding.

The trial court should have rendered judgment in favor of appellees for the total of these items, $496.68.

Appellants further question the finding of the trial court as to the reasonable value of the services rendered in the estate by Armstrong, contending that such finding is against the great and overwhelming preponderance of the evidence. In this case the trial court, having heard the evidence in the removal and certiorari suits, was thoroughly familiar with the nature, value, and extent of the services rendered, and was in a better position to fix the compensation for them than we can possibly be. Texon Oil & Land Co. v. Hanszen (Tex.Civ.App.) 292 S.W. 563. The assignments raising this question will be overruled.

The assignments and counter assignments raising the question of the allowance of interest prior to July 21, 1933, in view of our above holdings, call for no discussion.

The same is also true of Armstrong's remaining assignments of error.

Aside from the assignments heretofore disposed of, American Surety Company complains of the judgment against it as surety for Armstrong. Its position is that both the commissions and attorney's fee not having been paid to Armstrong in his capacity as administrator, that he having acted in good faith and in pursuance of a judgment which had not been set aside

in paying out the commissions and fee, and there being neither allegation nor proof that he, as administrator, was negligent in not collecting from himself the commissions and fee, it, as his surety, could not be held liable for those items.

We have concluded that the commissions paid out by Armstrong could not be inquired into in this suit, as to them these questions pass from the case.

The same is also true as to sums paid out as attorney's fee with the exception of the sum of $435.83, which appears to have been paid on July 20, 1931, and subsequent to the judgment approving the annual account.

The contention that such sums were paid in good faith is not sustained by the record.

In Mrs. Anderson's final report, which Armstrong prepared, there appears a recitation that Mrs. Anderson had allowed Armstrong a fee of $4,500. This was later disputed by Mrs. Anderson and the court found in the removal suit that she had never approved such claim.

As said by Justice Walthall in the appeal of the removal suit [55 S.W.(2d) 235, 240]:

"The record clearly shows under the trial court's findings that the allowance of the attorney's fee by the probate court was made under a misapprehension of the facts, as to the approval of the fee by Mrs. Anderson; also that the probate court, in allowing the attorney's fee in the final account of Mrs. Anderson as administratrix, adjudicated the question of the necessity of the legal services and the reasonableness of the attorney's fee at a time when such fee had not been paid."

Every man is presumed to know the law and certainly Mr. Armstrong, who, as an attorney, was representing the administratrix, will be presumed to know that a probate court cannot adjudicate the questions of necessity of legal services and reasonableness of fees in application for attorney's fees made before payment of fees by the representative. If this presumption be indulged, then Armstrong knew when he paid himself the sums which he now claims were due him as attorney's fee, that the allowance made by the court in approving the final account was illegal.

And, furthermore, if he misrepresented the facts relative to Mrs. Anderson's approval of the attorney's fee to the probate court (as the trial court found that he

did), then how can it be said that he was acting in good faith in paying to himself the fee allowed by that court. The trial court's finding here that when he paid himself the attorney's fee he entertained the belief that the judgment on the final account of Mrs. Anderson was a binding and final judgment would not necessarily carry with it the conclusion that he was at such time acting in good faith.

This suit is to recover from Armstrong a balance of funds belonging to the estate and in connection therewith appellees alleged that he had on certain dates illegally paid to himself certain sums, the total of which made up the amount which he had misapplied as administrator of the estate.

This being the nature of the suit and the record showing without dispute that he had not accounted for all the money which he had received, it certainly cannot be said that he received the money individually and that before a recovery can be had on his administrator's bond it must be shown that he was negligent in failing to collect these amounts from himself.

■ American Surety Company prayed for a judgment over against Armstrong for any amount for which judgment might be rendered against it and in addition sought to recover the sum of $1,000 as attorney's fees. As a basis for such a recovery, it alleged that it became the surety for Armstrong by virtue of a written application in which he bound himself to indemnify and save it harmless from and against every claim of every nature whatsoever (including counsel fees). The trial court made the following findings of fact relative to the agreement to indemify:

"The bond executed by defendant American Surety Company for defendant Armstrong was executed, filed and approved on May 13, 1930. The application bears date of 6th day of June, 1930, and was signed subsequent to the execution and delivery of the bond. Prior to the execution of the bond, defendant Armstrong knew he was expected to sign an application therefor. The application for the bond contains a provision that the principal therein should indemnify the surety for any expenses incurred for attorney's fees in case of suit with reference thereto. The evidence fails to show whether or not this is a customary and usual provision in such applications, and as to whether or not defendant Armstrong, at the time he gave the order for the bond,

contemplated the execution of such indemnity provision. The agent of the defendant surety did contemplate, at the time of the execution of the bond, that he should sign an application containing such indemnity provision. Under the facts, the minds of the parties never met as to the indemnity provision contained in the application until the legal rights of the parties were fixed as to the bond. The indemnity provision is without consideration.

"The sum of $500.00 would be a reasonable attorney's fee for the American Surety Company for the defense of this suit."

"Prior to the execution of the administrator's bond, by Otto Armstrong, it was contemplated by both Armstrong and the Company that he would sign an application therefor."

His conclusion from these findings was:

"The surety is not entitled to a judgment against defendant Armstrong for its attorney's fees in this action. Prior to the execution of the bond, there was no meeting of the minds of the parties with reference to the matter of indemnification as to attorney's fees. The subsequent inclusion of the agreement in the application for the bond already executed is insufficient in and of itself to show such agreement existed prior to the execution of the bond, although it was understood, at or prior to the execution of the bond, that defendant Armstrong should make a written application therefor."

These findings and conclusions are assailed here, the surety company contending the signing of the bond by it and the signing of the application and indemnity agreement by Armstrong constituted an entire contract, and that, therefore, there was a meeting of the minds of the parties and the agreement to indemnify did not lack a consideration. It appears that the bond was executed on or before May 14, 1930, and on that date filed with the county clerk of El Paso county, Tex., and that Armstrong's application for the bond and the indemnity agreement was not executed until June 5th, following.

Armstrong testified that he was not told anything about indemnifying the surety company until after the bond had been executed.

We agree with the conclusion of the trial court from the facts as he found them to be that there was no meeting of

the minds as to the indemnification of attorney's fees prior to the execution of the bond.

The surety company's position that the law will imply an agreement upon the part of a principal to repay to the surety the money it might be compelled to pay as attorney's fees in defending both itself and the principal cannot be sustained.

The general rule is that when a surety is forced to pay the debt of his principal a promise on the part of the principal to repay him the amount so paid is implied and that the surety becomes a simple contract creditor of the principal. We know of no rule of law which allows a simple contract creditor to recover attorney's fees.

That a surety is not entitled to recover attorney's fees in the absence of a contract therefor was held in Hays v. Housewright (Tex.Civ.App.) 133 S.W. 922.

The judgment of the trial court will be reformed so as to eliminate therefrom the attorney's fee awarded Armstrong and all amounts awarded appellees except the sum of $435.83 paid as part of the attorney's fee on July 20, 1931, and the two items of court costs paid on June 16 and July 13, 1933, totaling $496.68, and as so reformed, the judgment is affirmed.

### On Motion for Rehearing.

Appellees have filed a very forceful motion for rehearing setting up twenty different grounds of alleged error. We consider them without merit except the one complaining of our failure to charge Armstrong with interest upon the funds which we found he illegally held.

In that respect we were in error and our former judgment is hereby modified so as to add to the recovery of appellees, against Armstrong, interest at the rate of 10 per cent. per annum on the sum of $496.68, from the dates upon which the several items were converted by him as shown by the judgment. The motion is in other respects overruled.

Appellant American Surety Company has also filed its motion for rehearing complaining of our action in overruling its forty-second, forty-third, forty-fourth, and forty-fifth assignments of error and in holding that there was no meeting of the minds of the parties as to the indemnification of attorneys' fees and in denying it recovery of such fees against appellant

Armstrong. In view of the fact that the application was signed by Armstrong long after the bond had been executed and the other facts found by the trial court in this connection, we are of the opinion that the surety company was not entitled to recover the attorney's fees in this case and that the indemnity stipulation is insufficient to support such a recovery. See St. Louis, S. F. & T. R. Co. v. Gilliam & Jackson (Tex.Civ.App.) 166 S.W. 706; Galveston, H. & S. A. Ry. Co. v. Botts, 22 Tex.Civ.App. 609, 55 S.W. 514; Pecos & N. T. R. Co. v. Stinson (Tex.Civ.App.) 181 S.W. 526; Gulf, C. & S. F. R. Co. v. House & Watkins, 40 Tex.Civ.App. 105, 88 S.W. 1110; and Gulf, C. & S. F. R. Co. v. Combes & Rretor (Tex.Civ.App.) 80 S.W. 1045.

Its motion is accordingly overruled.